**Joshua TUBALADO, Petitioner,**

v.

**Michael B. MUKASEY, Attorney General, Respondent.**

No. 04–76719.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 2008.

Filed Aug. 8, 2008.

Bea, Circuit Judge, concurred in part, dissented in part, and filed opinion.

Jesse G. Quinsaat, Esquire, Quinsaat & Hooper, Solana Beach, CA, for Petitioner.

CAS–District Counsel, Esquire, Office of the District Counsel Department of Homeland Security, San Diego, CA, Ronald E. Lefevre, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Jennifer Parker Levings, OIL, Song E. Park, Esquire, Terri Jane Scadron, Esquire, DOJ–U.S. Department of Justice, Washington, DC, for Respondent.

Before: KOZINSKI, Chief Judge, ALDISERT[*] and BEA, Circuit Judges.

[*] The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

## MEMORANDUM [**]

Joshua Tubalado petitions for review of the Board of Immigration Appeals's ("BIA") order affirming the Immigration Judge's ("IJ") decision denying his application for cancellation of removal. We have jurisdiction under 8 U.S.C. § 1252, and we grant the petition.

Tubalado contends that his father's lawful admission can be imputed to him, and that this additional time allows him to satisfy the seven-year continuous residence requirement. *See* 8 U.S.C. § 1229b(a)(2). The IJ and BIA did not have the advantage of *Cuevas–Gaspar v. Gonzales,* 430 F.3d 1013 (9th Cir.2005), when they decided Tubalado's case. At oral argument, Tubalado's counsel suggested Tubalado's father had resided continuously in the United States for seven years prior to his service in Japan. Under these circumstances, we believe these proceedings should be remanded to the BIA to consider Tubalado's case anew in light of the teachings of *Cuevas–Gaspar.* The BIA should consider whether the reasoning of *Cuevas–Gaspar* extends to a situation where the alien did not reside in the United States with his parent during the applicable time period, and whether the reasoning of *Cuevas–Gaspar* does or does not affect the BIA's hesitance to impute 8 U.S.C. § 1229b(d)(3).

**PETITION GRANTED; REMANDED.**

BEA, Circuit Judge, concurring in part and dissenting in part:

I concur in the panel's remand of this case to the BIA to determine in the first instance whether *Cuevas–Gaspar v. Gonzales,* 430 F.3d 1013 (9th Cir.2005), allows

[**] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Tubalado, a permanent resident, to impute the admission date of his father to meet the cancellation of removal statute's requirement of seven years' continuous United States residency after lawful admission. I dissent from the panel's remand to the BIA to "consider" whether *Cuevas–Gaspar* permits Tubalado to impute his father's qualification for the "military exception" to the cancellation of removal statute's residency requirements, 8 U.S.C. § 1229b(d)(3).[1] As I read that statute, it is not ambiguous, but clear, as a matter of law, that the "military exception" applies only to the person who served in the armed forces—not his or her children. As I read *Cuevas–Gaspar,* no one in that case, much less the mother whose residency status was imputed, served in the United States military.

The principle behind the *Cuevas–Gaspar* imputation rule is to avoid separating children from their permanent resident parents with whom they have resided for a significant period of time in the United States. *See Cuevas–Gaspar,* 430 F.3d at 1024 ("[W]e are instructed ... that our immigration statutes and regulations are replete with provisions 'giving a high priority to the relation between permanent resident parents and their children.' "); *see also Lepe–Guitron v. INS,* 16 F.3d 1021, 1025 (9th Cir.1994) (holding, in the primary case on which *Cuevas–Gaspar* relied, imputation of a parent's residency status to a child may be justified where deportation would "sever[ ] the bonds between parents and their children who had resided legally in the United States for the better part of their lives...").[2] The so-called "military exception" of 8 U.S.C. § 1229b(d)(3), however, has nothing to do with keeping families together. Rather, the statute simply rewards individuals who personally serve on active-duty status in the United States military for two years or more.

Imputing his father's qualification for the military exception in the manner Tubalado suggests would mean that a child who does not live with an active-duty military parent—even a child who is estranged from, *or never met,* his parent—and who does not reside in the United States, could come to the United States, commit a removable offense, and have a leg up on the residency requirement for cancellation of removal because his parent served in this nation's military.

Congress's intent is clear from the language of the statute: individuals who serve on active duty in the United States Armed Forces need not show seven years' continuous residency to cancel removal if they commit a crime. Congress said nothing about their offspring.

The non-applicability of the "military exception" to the *Cuevas–Gaspar* rule is a question of law that does not require factual analysis and is not based on an ambiguous statute, so remand is unnecessary under *INS v. Orlando Ventura,* 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002), or *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Accordingly, I dissent from the panel's remand order and

---

1. 8 U.S.C. § 1229b(d)(3) provides: "The requirements of continuous residence or continuous physical presence in the United States under [the cancellation of removal statute] shall not apply to an alien who (A) has served for a minimum period of 24 months in an active-duty status in the Armed Forces of the United States and, if separated from such service, was separated under honorable conditions, and (B) at the time of the alien's enlistment or induction was in the United States."

2. *Lepe–Guitron* also did not involve the United States military.

---

would hold the "military exception" does not apply to Tubalado as a matter of law.